UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

In re:                                                    Chapter 11

APPALACHIAN LIGHTING SYSTEMS, INC.,      Case No. 17-24454-GLT

            Debtor.

_____/

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

**DATED JUNE 14, 2019**

HAHN LOESER & PARKS LLP
Daniel A. DeMarco (Ohio Bar No. 0038920)
*Admitted Pro Hac Vice*
Christopher B. Wick (Ohio Bar No. 0073126)
*Admitted Pro Hac Vice*
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:  (216) 621-0150
Facsimile:  (216) 241-2824
E-Mail:      dademarco@hahnlaw.com
             cwick@hahnlaw.com
and

Kirk B. Burkley (PA ID No. 89511)
BERNSTEIN BURKLEY, P.C.
707 Grant Street, Suite 2200 Gulf Tower
Pittsburgh, PA 15219-1900
Telephone:  (412) 456-8108
Facsimile:  (412) 456-8135
Email:       kburkley@bernsteinlaw.com
*Co-counsel for Debtor*

10965766.3

**PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL THE DEBTOR'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY THE BANKRUPTCY COURT.   NO SUCH DISCLOSURE STATEMENT HAS BEEN APPROVED YET BY THE BANKRUPTCY COURT.  THE DEBTOR RESERVES THE RIGHT TO AMEND THE PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME.   AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, NEITHER THIS PLAN NOR THE DISCLOSURE STATEMENT SHALL BE CONSTRUED AS AN ADMISSION AND INSTEAD SHALL BE TREATED AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS.**

## INTRODUCTION

Appalachian Lighting Systems, Inc. a/k/a ALLED ("Debtor") respectfully proposes the following chapter 11 plan of reorganization.  Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in section 1.1 of Article I hereof.

## ARTICLE I.
## DEFINITIONS

### 1.1     Definitions

Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise.  As used herein:

"Accrued Professional Compensation" means, at any given moment, all accrued, contingent and/or unpaid fees for legal, financial advisory, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date that are awardable and allowable under Bankruptcy Code sections 328, 330(a) or 331 by any retained Professional in the Chapter 11 Case, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all (a) to the extent that any such fees and expenses have not been previously paid and (b) after applying any retainer provided to such Professional and not yet applied.  To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

"Administrative Claim" means a Claim for:   (a) any cost or expense of administration (including, without limitation, the Professional Fee Claims) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving Debtor's Estate or operating the business of Debtor, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by Debtor in the ordinary course of their respective businesses, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; or (b) any fees or charges assessed against the Debtor's Estate under section 1930 of title 28 of the United States Code.

"Administrative Claims Bar Date" means the bar date for Administrative Claims as such term is defined herein.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

10965766.3

"Allowed" means, with reference to any Claim, (a) any Claim against Debtor that has been listed by Debtor in the Schedules, as such Schedules may have been amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not Disputed or contingent, and with respect to which no contrary Proof of Claim has been Filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a Proof of Claim has been timely Filed before the Bar Date, provided that at the time of the Effective Date Debtor has not identified such Claim as being objectionable in part or in whole and no Objection to the allowance thereof has been Filed by the Claims Objection Deadline; *provided, however,* that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated Claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

"Allowed Claim" means a Claim that is Allowed.

"Assumed Executory Contract and Unexpired Lease List" means the list (as may be amended) of Executory Contracts and Unexpired Leases that will be assumed by Reorganized Debtor pursuant to the provisions of section 365 of the Bankruptcy Code and Article VI hereof determined by Debtor.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, Estate or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

"Ballot" means the forms of ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Pennsylvania or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a Proof of Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court.

"Bridgeway" means Bridgeway Capital, Inc.

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the Commonwealth of Pennsylvania are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"Causes of Action" means any and all actions, Claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choices in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, including equitable subordination, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to Debtor, including, but not limited to, the Avoidance Actions.

"Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code, Case No. 17-24454, commenced by the Debtor in the Bankruptcy Court on the Petition Date.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of:  (a) 30 days after the Effective Date; (b) 60 days after the date on which any Claim is Filed; or (c) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (a) and (b) above.

"Class" means each class, subclass or category of Claims or Interests as classified in Article II of the Plan.

"Confirmation" means the entry of the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

10965766.3

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance acceptable to the Debtor.

"Cooperating Estate Professionals" means (i) Robert O. Lampl a/k/a Lampl Law Office, and (ii) Hahn Loeser & Parks LLP.

"Creditor" means any Person that is the Holder of any Claim against Debtor.

"Day(s)" means, unless expressly otherwise provided, calendar day(s).

"Debtor" means Appalachian Lighting Systems, Inc. a/k/A ALLED.

"Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

"Disclosure Statement" means Debtor's Disclosure Statement with Respect to the Debtor's Chapter 11 Plan of Reorganization Dated June 14, 2019, as supplemented, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by Debtor, as the same may be altered, amended, supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

"Disputed" means any Claim or Interest that has been neither Allowed nor Disallowed.

"Disputed Claim" means a Claim, or any portion thereof, that is Disputed.  For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"Effective Date" means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"Equity Investment" means the $100,000.00 investment provided by the Equity Sponsor in consideration for 100% of the equity of the Reorganized Debtor.

"Equity Sponsor" means JP Investor LLC, a Pennsylvania limited liability company that shall provide a $100,000.00 investment in consideration for 100% of the equity of the Reorganized Debtor.

"Estate" means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

10965766.3

"Executory Contracts" means contracts to which Debtor is a party that are subject to assumption or rejection under section 365 of the Bankruptcy Code.

"Exit Facility" means a senior secured credit facility with terms and conditions substantially similar to those in the Exit Facility Term Sheet as modified as proposed in Section 4.1 of this Plan.

"Exit Facility Agreement" means a credit agreement, if any, dated on or after the Effective Date, by and among Reorganized Debtor and the Exit Lender with respect to the Exit Facility, as the same may be subsequently amended, restated, amended and restated, supplemented or otherwise modified from time to time, together with all instruments and agreements related thereto, with terms and conditions substantially similar to those in the Exit Facility Term Sheet.

"Exit Facility Documents" means the Exit Facility Agreement and all other related agreements, documents or instruments to be executed or delivered in connection therewith, with terms and conditions substantially similar to those in the Exit Facility Term Sheet.

"Exit Facility Term Sheet" means the non-binding term sheet from the Exit Lender dated on or about June 13, 2019, providing for a senior secured credit facility of up to an aggregate principal amount of $250,000.00, a true copy of which is attached as Exhibit 4.1.

"Exit Lender" means JP Lender LLC, a Pennsylvania limited liability company that is a party to a non-binding term sheet in respect of a loan to Reorganized Debtor on the Effective Date in an aggregate amount not to exceed $250,000.00 or such lesser amount as may be determined by Reorganized Debtor in accordance with the Exit Facility Documents.

"File, Filed or Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; *provided however*, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"General Unsecured Claims" means all Claims, including Rejection Claims, that are not Administrative Claims, Priority Tax Claims, Miscellaneous Secured Claims,

Miscellaneous Priority Claims, Prepetition Senior Secured Claims, Prepetition Senior Deficiency Claims, or Insider Claims.

"Holdback Amount" means, with respect to Accrued Professional Compensation, amounts held back pursuant to an order or orders of the Bankruptcy Court in the Chapter 11 Case.

"Holdback Amount Reserve" means, with respect to Accrued Professional Compensation, a reserve established by Reorganized Debtor on the Effective Date for the benefit of Professionals, and to be held in trust for the Professionals, for the payment of the Holdback Amount.

"Holder" means an Entity holding a beneficial interest in a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a holder of a beneficial interest in a Claim or Interest in such Class or of such type.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim which is Impaired.

"Initial Distribution Date" means a date on a Business Day thirty (30) days after the Effective Date.

"Innovation Works" means Innovation Works, Inc.

"Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

"Insider Claims" means any Claim of an Insider against Debtor, other than any Claim of an Insider that is a Claim for indemnification under the Debtor's organizational documents, employment agreements, internal policies or otherwise.

"Interests" means any and all equity interests, ownership interests or shares in Debtor issued by Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, rights, options, warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in Debtor, stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of Debtor or obligating Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

"IP Monetization" means the third-party funded patent monetization program to be administered by Reorganized Debtor on and after the Effective Date as described in Section 4.6 of the Plan.

10965766.3

"K-I Parties" means collectively Alphonse Iagnemma, Jr., William a/k/a Bill Kreuer, LED's Are Magic, Inc., and any affiliate of any of them, including without limitation Carolina Country Roads, Con Yeager Spice Company and Stonewood, LLC.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases, evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rights, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"Miscellaneous Priority Claims" means any Claim against Debtor entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Nissan" means Nissan Motor Acceptance Corporation.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than a Claim or an Interest that is Allowed.

"Person" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; *provided, however*, "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; or (b) is a guarantor of a pension benefit payable by or on behalf of Debtor.

"Petition Date" means November 3, 2017, the date on which Debtor Filed its petition for relief commencing the Chapter 11 Case.

"Plan" means this Debtor's Chapter 11 Plan of Reorganization dated June [14], 2019, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Plan Proponent, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the

10965766.3

Bankruptcy Rules, the Confirmation Order and the terms and conditions of Section 12.04 of the Plan.

"Plan Loan Documents" means the loan documents evidencing the Exit Lender's agreements with the Reorganized Debtor.

"Plan Documents" means, collectively, the Disclosure Statement, the Plan, any Plan Supplement, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening).

"Plan Proponent" means Debtor.

"Plan Supplement" means any supplement to this Plan to be Filed with the Bankruptcy Court prior to the Confirmation Hearing.

"Priority Tax Claim" means any and all Claims accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code, including the Real Property Tax Claims.

"Pro Rata Share" means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until Disallowed).

"Professional Fee Claim" means an Allowed Claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application by the Professionals in the Chapter 11 Case made to and approved by the Bankruptcy Court.

"Professionals" means any professional employed in the Chapter 11 Case pursuant to section 327 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4) of the Bankruptcy Code.

"Proof of Claim" means a proof of Claim Filed against Debtor in the Chapter 11 Case.

"Property" means all assets or property of Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by Debtor, or acquired by Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

"Rejection Claims" means claims of any non-Debtor counterparty to any unexpired lease of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of the Chapter 11 Case under section 365 of the Bankruptcy Code or pursuant to the Plan.

"Reorganized Debtor" means Debtor, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date of this Plan.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

"Unclaimed Property" means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to Debtor as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.8 of the Plan.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"Unsecured Claims Fund" means Forty Thousand Dollars ($40,000.00) set aside from the Equity Investment for the benefit of the holders of Allowed Class 6 Claims.

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Western District of Pennsylvania.

"Voting Deadline" means _____, 2019 at 4:00 p.m. (prevailing Eastern time).

## 1.2    Rules of Interpretation

All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code).  Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.  The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.  The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions thereof.  Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity).  Without limiting the preceding sentence, the

rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 10.10 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

### 1.3    Exhibits

All Exhibits to the Plan, including the Plan Supplement, if any, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

### 1.4    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.1    Generally

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests in Debtor.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.  A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

### 2.2    Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, U.S. Trustee Fees, and any Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan.  The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

### 2.3    Unimpaired Classes

The Plan classifies the following Unimpaired Claims and Unimpaired Interests that are not entitled to vote on the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of Claim or Interest in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims or Interests and is not entitled to vote to accept or reject the Plan:

Class 4 shall consist of the Secured Claim of Nissan

10965766.3

**2.4**      **Impaired Classes Entitled to Vote**

The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 1 shall consist of the Secured Claim of Synapse

Class 2 shall consist of the Secured Claim of Bridgeway

Class 3 shall consist of the Secured Claim of Innovation Works

Class 5 shall consist of the Unsecured Convenience Claims

Class 6 shall consist of all General Unsecured Claims

Class 7 shall consist of all K-I Parties Unsecured Claims

To the extent the Holder of a Claim in an Impaired Classes does not submit a ballot, Debtor shall presume that the Holder intended to vote to accept the Plan and Debtor shall count the Holder's Claim accordingly.

**2.5**      **Impaired Classes Deemed to Reject**

The Plan classifies the following Impaired Classes of Interests and Claims as Impaired Classes that are not entitled to vote to accept or reject the Plan.  Pursuant to 1126(g) of the Bankruptcy Code, each Holder of an Interest or Claim in these Classes is conclusively presumed to have rejected the Plan in respect of such Interests or Claims because the Plan does not entitle the Holders of such Interests and Claims to receive or retain any Property under the Plan on account of such Interests or Claims.  Accordingly, Holders of such Interests and Claims are not entitled to vote to accept or reject the Plan:

Class 8 shall consist of all Interests in Debtor

**ARTICLE III.**
**PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

**3.1**      **Satisfaction of Claims and Interests**

The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against or Interests in Debtor and Debtor's Estate, expect as otherwise provided in the Plan or the Confirmation Order.

**3.2**      **Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests**

Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such

Claims are Unimpaired under the Plan and, in accordance with section 1129(a)(1) of the Bankruptcy Code are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.  Class 1 Claims are classified as Classes of Claims and Interests that are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims or Interests in this Class are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Classes 2 through 6 are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims.  Class 7 is Impaired under the Plan and the Holders thereof will neither receive nor retain any Property on account of such Interests and, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Interests are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Interests.

### 3.3    U.S. Trustee Fees

On the Effective Date, the Reorganized Debtor shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date.

### 3.4    Administrative Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article II hereof.

Subject to the provisions of section 328, 330(a), and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release, and discharge of an in exchange for each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash on the later of the Effective Date or the date on which an Administrative Claim becomes an Allowed Administrative Claim or as soon as practicable after either such date: provided further, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto; provided further, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business.

All requests for payment of an Administrative Claim (other than an Ordinary Course Obligation) must be filed with the Bankruptcy Court/Agent and served upon counsel to Debtor and Reorganized Debtor, as applicable, on or before the Administrative Claim Bar Date, which shall be 30 days after the Effective Date.  Any request for payment of an Administrative Claim that is not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against Reorganized Debtor without the need for any objection by Reorganized Debtor or further notice to or action, order, or approval of the Bankruptcy Court or

10965766.3

other Entity.  Reorganized Debtor may settle and pay and Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such administrative claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need by Filed with respect to an Administrative Claim previously allowed by Final Order.

Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code section 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without further notice to any party or action (including, without limitation, the need to file a fee application), order or approval of the Bankruptcy Court.

As holders of any Administrative Claim may accept such other treatment as may be agreed upon by such holder and Debtor or otherwise determined upon an order of the Bankruptcy Court, Debtor has requested that the Cooperating Estate Professionals, each draw down their respective retainers, accept partial payment in cash on the Initial Distribution Date and payment of the balance after the Effective Date from the IP Monetization, and the same have so agreed.

### 3.5    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on the Effective Date shall receive, at the option of Debtor, one of the following treatments, in complete satisfaction of such Allowed Priority Tax Claim: (1) Cash on the Initial Distribution Date in an amount equal to the amount of such Allowed Priority Tax Claim, (2) Cash payable in installment payments over a period of time not to exceed five years after the Petition Date with an aggregate value, as of the Effective Date, equal to the amount of such Allowed Priority Tax Claim, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, (3) to the extent that Debtor is not delinquent on any tax obligations to a Holder of an Allowed Priority Tax Claim, payment in the ordinary course of business, or (4) such other treatment as may be agreed upon by such holder and Debtor or otherwise determined upon an order of the Bankruptcy Court.

### 3.6    Class 1: Synapse

Class 1 is impaired.  The Class 1 Claim of Synapse has been allowed and shall be paid in accordance with the terms approved pursuant to the Court's *Order (I) Approving A Settlement With Synapse Wireless, Inc. Pursuant To Federal Rule of Bankruptcy Procedure 9019 And (II) Granting Related Relief* [Docket No. 237].

### 3.7    Class 2: Bridgeway

Class 2 is impaired.  The disputed and unliquidated Class 2 Claim of Bridgeway shall be paid if, as, when and to the extent the same is allowed, at 4% interest, with monthly installments based on a thirty-year amortization commencing on the first day of the first month immediately following the Initial Distribution Date or in accordance with the agreement of Bridgeway and Reorganized Debtor or the order of the Court.

3.8     __Class 3: Innovation Works__

       Class 3 is impaired.  The unliquidated Class 3 Claim of Innovation Works shall be deemed allowed and shall be paid according to its priority as a Class 3 Claim from the IP Monetization, an amount not to exceed $200,000.

3.9     __Class 4: Nissan__

       Class 4 is unimpaired.  The Class 4 Claim of Nissan shall be paid if, as, when and to the extent the same is allowed, in cash.

3.10     __Class 5: Unsecured Convenience Class Claims__

       Class 5 is impaired.  Unsecured Convenience Claims consists of Allowed Unsecured Claims in the amount of $1,000 or less, and the Claims of those Creditors who elect to reduce their claims to $1,000 by so indicating on the Ballot that accompanies the Plan. On the Initial Distribution Date, each Holder of an Allowed Unsecured Convenience Claim shall receive Cash in an amount equal to the lesser of seventy-five percent (75%) of (a) the Allowed Amount of such Claim, or (b) the reduced claim amount of $1,000.  Holders of Allowed Class 5 Claims shall be entitled to vote to accept or reject the Plan.

3.11     __Class 6: General Unsecured Claims__

       Class 6 is impaired.  Class 6 consists of Holders of Allowed non-priority general unsecured Claims against the Debtor.  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall be paid in Cash on the Initial Distribution Date, or when the respective Claim becomes an Allowed Claim pursuant to the Terms of this Plan, their respective *pro rata* share of the Unsecured Claim Fund.  Holders of Allowed Class 6 Claims shall be entitled to vote to accept or reject the Plan.

3.12     __Class 7: K-I Parties Unsecured Claims__

       Class 7 is impaired.  Class 7 consists of the disputed and unliquidated claims asserted by the K-I Parties, including without limitation, Alphonse Iagnemma, Jr. [POC #10], William a/k/a Bill Kreuer [POC #11] and LED's Are Magic, Inc. [POC #13], and any claim that may be asserted by any of the K-I Parties, which claims (collectively, the "K-I Claims") are disputed by Debtor.  Except to the extent that a Holder of a K-I Claim agrees to a less favorable treatment, in full satisfaction, settlement, release and discharge of, and in exchange for the K-I Claims, the K-I Parties shall be paid according to the priority as a Class 7 Claim from the IP Monetization, an amount not to exceed $1,000,000 (the "K-I Amount"), which shall be paid after (a) the Holders of Allowed Claims in Class 1, Class 3 and the Cooperating Estate Professionals have been paid in full from the IP Monetization; and (b) the Reorganized Debtor shall have received $1,000,000 from the IP Monetization, and which K-I Amount shall be paid on a 50/50 basis to the K-I Parties and the Reorganized Debtor from the IP Monetization after the Reorganized Debtor first shall have received $1,000,000 from the IP Monetization.  The K-I Amount shall be distributed pro rata based on the face amount of POC #10 and POC #11, to

10965766.3

Alphonse Iagnemma, Jr. and to William a/k/a Bill Kreuer, respectively. For purposes of voting only, as Class 7 Claims only, POC #10 shall be temporarily allowed in the amount of $1,000, POC # 11 shall be temporarily allowed in the amount of $1,100, and POC #13 shall be temporarily allowed in the amount of $100. Holders of Allowed Class 7 Claims shall be entitled to vote to accept or reject the Plan.

### 3.13   Class 8:  Interests in the Debtor

Class 8 consists of any Interests in Debtor. Class 8 Interests are Impaired. On the Effective Date, all Interests shall be deemed cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no Distribution to the Holders of Interests in Debtor. Class 8 Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Interests in Debtor are not entitled to vote to accept or reject the Plan.

### 3.14   Confirmation Pursuant to Bankruptcy Code Section 1129(a)(10) and 1129(b)

Bankruptcy Code section 1129(a)(1) shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims for Debtor. Debtor shall seek Confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any rejecting Class of Claims or Interests. Debtor reserves the right to modify the Plan in accordance with Article VIII hereof to the extent, if any, that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification.

### ARTICLE IV.
### MEANS OF IMPLEMENTATION OF THE PLAN

### 4.1   Exit Facility

On or before the Effective Date, Reorganized Debtor shall enter into the Exit Facility with the Exit Lender. As described in the Exit Facility Term Sheet, the Exit Facility shall provide Reorganized Debtor a loan in the amount of $250,000, bearing interest at the rate of 4 percent per annum simple interest (4%), which sum shall be repaid by Reorganized Debtor as follows: (i) on the first day of the month, beginning in the month following the month following the Effective Date, interest only for twenty-four months; (ii) thereafter, on the first day of the month, principal and interest (on a twenty-year amortization), for thirty-six months, and (iii) thereafter, on the first day of the month, the balance due. The Exit Facility shall be secured by security interest in all assets of Reorganized Debtor. Unless otherwise agreed, the Exit Lender's security interest shall have priority over all other security interests in Reorganized Debtor's assets, provided, however, the Exit Lender's security interest shall be subordinate to the security interests of Synapse or any other secured claim prior to the Petition Date. Confirmation shall be deemed approval of the Post-Confirmation Exit Facility, if any (including the transactions contemplated thereby, such as any supplementation to the Exit Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by Reorganized Debtor in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and authorization for Reorganized Debtor to enter into and execute the Exit Facility Agreement, if any, and such other Exit Facility Documents as the Exit Lender may reasonably

require, subject to such modifications as Reorganized Debtor may deem to be reasonably necessary to consummate the Exit Facility.  Reorganized Debtor may use the Exit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

Upon the date the Exit Facility Agreement becomes effective, (i) Reorganized Debtor is authorized to execute and deliver the Exit Facility Documents and perform their obligations thereunder, including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Exit Facility Documents shall constitute the legal, valid, and binding obligations of Reorganized Debtor, enforceable in accordance with their respective terms and (iii) no obligation, payment, transfer or grant of security under the Exit Facility Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim.  Reorganized Debtor is authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence perfection of such Liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of the occurrence of the Effective Date, and any such filings, recordings, approvals and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that would be necessary under applicable law to give notice of such Liens and security interests to third parties.

### 4.2    **Issuance of New Stock**

In consideration of the monetary contributions provided to Reorganized Debtor by the Equity Sponsor under this Plan and going forward, the Interests in Reorganized Debtor will be issued solely to the Equity Sponsor and/or such other person or entity as the Equity Sponsor may designate.  The Plan does not contemplate James Wassel or any prepetition holder of any equity Interest retaining any equity in Debtor or receiving any equity in Reorganized Debtor.

### 4.3    **Corporate Existence**

Except as otherwise provided herein, Debtor, as Reorganized, shall continue to exist after the Effective Date as a separate corporate entity, with all the powers of a Pennsylvania corporation.

### 4.4    **Post-Confirmation Operations**

As of the Effective Date, Reorganized Debtor may operate its businesses and use, acquire, settle and compromise claims or interests without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay the charges it incurs for professional fees, disbursements, expenses or related support services after the Confirmation Date (including any Professional Fee Claims) without application to the Bankruptcy Court.

10965766.3

### 4.5    Debtor's Retention of Causes of Action

Except as otherwise provided for here, on the Effective Date, all rights, claims, and causes of action of Debtor pursuant to: (a) sections 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code; and (b) all other claims and causes of action of Debtor against any Person (other than rights, claims and causes of action expressly released by Debtor in the Plan or pursuant to a Final Order) shall be preserved and become property of Reorganized Debtor.  Reorganized Debtor shall be deemed the representative of their respective estates under section 1123(b) of the Bankruptcy Code and will be authorized and shall have the power to commence and prosecute any and all causes of action (other than rights, claims and causes of action expressly released by Debtor in the Plan or pursuant to a Final Order) that could have been asserted by Debtor.  **ALL SUCH ACTIONS SHALL SURVIVE CONFIRMATION AND THE COMMENCEMENT OR PROSECUTION OF SUCH ACTIONS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE.**

### 4.6    IP Monetization

Reorganized Debtor shall administer a third-party funded patent monetization program. Reorganized Debtor shall retain Thomas G. Southard and his law firm, Butzel Long, to represent Reorganized Debtor in the IP Monetization program, who, with Reorganized Debtor, in turn shall enter into agreements with one or more third party funders such that Reorganized Debtor shall not expend any cash or incur any debt with recourse to the Reorganized Debtor to obtain such funding. The costs for such third party funding and the fees to Thomas G. Southard and Butzel Long shall be paid solely from, and out of the initial proceeds received from, the IP Monetization and, unless otherwise agreed, the costs for such third party funding and the fees to Thomas G. Southard and Butzel Long shall be paid prior to any the receipt of any net proceeds by Reorganized Debtor. Only after the foregoing obligations to the third party funders, Thomas G. Southard and Butzel Long are satisfied shall Reorganized Debtor receive, and then promptly pay, net proceeds from the IP Monetization, which net proceeds shall be distributed to creditors. In accordance with this Plan, Reorganized Debtor shall pay, in the following order of priority, net proceeds from the IP Monetization to the Holders of Allowed Claims in Class 1; Class 2; Class 3; Cooperating Estate Professionals; and Class 7.  Only after the Plan obligations to the holders of Allowed Claims in Class 1, Class 2, Class 3, Cooperating Estate Professionals, and Class 7 are satisfied shall Reorganized Debtor retain proceeds from the IP Monetization.

### 4.7    Effectuating Documents and Further Transactions

Debtor and Reorganized Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE V.
## CLAIMS RESOLUTION AND DISTRIBUTIONS

### 5.1    Timing of Distributions

Except as specifically set forth in the Plan, Distributions will be made to Holders of Allowed Claims in accordance with Article III of this Plan.  If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article III of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, section 6.2 of the Plan, and in each case, subject to Article VIII of the Plan.  Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter.  Distributions to be made after the Effective Date shall be made on dates to be established by Reorganized Debtor, pursuant to the terms of the Plan.

### 5.2    Distributions to Holders of Classes 3, 4, 5, 6 and 7 Claims

i.    Initial Distributions.    On the Initial Distribution Date or as soon as reasonably practicable thereafter, Reorganized Debtor shall distribute the Distributions allocable to Allowed Claims held by members of Classes 3, 4, 5, 6 and 7.  For the purpose of calculating the amount of Cash to be distributed to Holders of Allowed Claims in Classes 3, 4, 5, 6 and 7, all Disputed Claims will be treated as though such Claims will be Allowed Claims in the amounts asserted or as estimated by the Court pursuant to section 502(c) of the Bankruptcy Code, as applicable.

ii.    Interim Distributions.    Reorganized Debtor may make interim Distributions to holders of Allowed Claims in Classes 3, 4, 5, 6 and 7 pursuant to and consistent with the resolutions of Disputed Claims since the date of the immediately prior Distribution.

iii.    Final Distributions.    On the Final Distribution Date or as soon as reasonably practicable thereafter, Reorganized Debtor shall make the balance of the Distributions required under the Plan.

### 5.3    Miscellaneous Distribution Provisions

i.    Method of Cash Distributions.    Except as set forth herein, any Distribution of Cash to be made by Reorganized Debtor pursuant to this Plan may be made by draft, check, wire transfer, or as otherwise required by applicable law.

ii.    Distributions on Non-Business Days.    Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

iii.    No Distribution in Excess of Allowed Amount of Claim.    Except as expressly set forth herein, pursuant to section 502(B)(2) of the Bankruptcy Code, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the allowed amount of such Claim.  Except as expressly provided herein, no Claim shall be allowed to the extent it is for postpetition interest.

10965766.3

### 5.4    Objections to Claims

Unless otherwise ordered by the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served on the applicable claimant on or prior to thirty (30) days after the later of: (a) the Effective Date; and (b) the date a Claim is filed with the Bankruptcy Court and served on counsel for Reorganized Debtor.

### 5.5    Settlement of Claims

Subsequent to the Effective Date, Reorganized Debtor shall have the authority to resolve any Disputed Claim for an Allowed Claim of less than $ 25,000 without further order of Bankruptcy Court order and subject only to the filing of a notice of such settlement with the Court.  Any such settlement shall be binding upon all parties in interest in the Chapter 11 Case; all other settlements require Reorganized Debtor to comply with Rule 9019.

### 5.6    Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  Any amounts returned to Reorganized Debtor in respect of such non-negotiated checks shall be held as applicable. Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued.  All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with section 5.7of the Plan, and all Holders of Claim in respect of void checks shall be forever barred, stopped and enjoined from asserting a claim to such funds in any manner against Debtor, Reorganized Debtor or their respective assets.

### 5.7    Unclaimed Property

All Property distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided in section 5.4 of the Plan.  After sixty (60) days following the relevant date of a Distribution, the holders of Allowed Claims and Interests otherwise entitled to receive the Distribution on such date shall cease to be entitled thereto, and such Unclaimed Property shall be retained by and will vest in Reorganized Debtor.  All full or partial payments made by Debtor and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of Debtor pursuant to the Plan.  Nothing in the Plan shall require the Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of Debtor and any Claims Filed in the Chapter 11 Case.  Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this section 5.7 will be forever barred, expunged, stopped and enjoined from asserting such Claim in any manner against Debtor, Reorganized Debtor, or their respective assets.

10965766.3

### 5.8     Limitation on Distribution Rights

If a claimant holds more than one Allowed Claim in any one Class, all Claims of the claimant in that Class may, in the sole discretion of Debtor or Reorganized Debtor, as the case may be, be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

### 5.9     Setoffs and Recoupment

Reorganized Debtor may, but shall not be required to, set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim, claims of any nature that Debtor or Reorganized Debtor may have against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim against Debtor or Reorganized Debtor shall constitute a waiver or release by Debtor or Reorganized Debtor of any claim that Debtor or Reorganized Debtor may possess against such Holder.

### 5.10    Compliance with Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, Debtor, or Reorganized Debtor, as appropriate, shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information is required by law to avoid withholding has not been received by Debtor, or Reorganized Debtor within thirty (30) Days from the date of such request, Debtor, or Reorganized Debtor, at its option, may withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

### 5.11    De Minimis Distributions

No Cash payment of less than five ($5.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim, and such sums shall be allocated on a pro rata basis.

### 5.12    Professional Fee Claims

i.     Claims for Accrued Professional Compensation.  Professionals or other Entities asserting a Claim for Accrued Professional Compensation for services rendered before the Effective Date must file and serve on Debtor and such other Entities who are designed by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or other order of the Bankruptcy Court an application for final allowance of such Claim for Accrued Professional Compensation no later than 45 days after the Effective Date.  Objections to any Claim for Accrued Professional Compensation must be filed and served on Reorganized Debtor, the Office of the U.S. Trustee and the requesting party no later than the earlier of (a) 30 days after such application is filed or (b) 75 days after the Effective Date.

10965766.3

ii.      <u>Treatment of Claims for Accrued Professional Compensation</u>.  A Claim for Accrued Professional Compensation in respect of which a final fee application has been properly filed and served pursuant to the Plan shall be payable to the extent approved by order of the Bankruptcy Court.   Subject to any Holdback Amount, on the Effective Date, or as soon thereafter as reasonably practicable, to the extent not otherwise paid, all Allowed Claims for Accrued Professional Compensation (including estimated Accrued Professional Compensation through the Effective Date) shall be paid in full in Cash.   To receive payment on the Effective Date for unbilled fees and expenses for periods that will not have been billed as of the Effective Date, the Professional shall deliver such estimates to the Debtor and the U.S. Trustee prior to the Effective Date.   If the estimated payments received by such Professional exceeds the actual allowed Accrued Professional Compensation for the estimated period, such excess amount shall be deducted from the Holdback Amount for such Professional, and if the Holdback Amount is insufficient, such Professional shall disgorge the difference.   If the estimated payment received by the Professional is lower than the Accrued Professional Compensation of such Professional, the difference shall be paid promptly to the Professional.

On the Effective Date, Reorganized Debtor shall fund the Holdback Amount Reserve for payment of the Holdback Amount.  Upon final allowance by the Bankruptcy Court of the Accrued Professional Compensation, or entry of an earlier order of the Bankruptcy Court granting the release of the Holdback Amount, such amount, less any excess paid in connection with estimated fees and expenses through the Effective Date, shall be paid promptly and directly to the Professionals.

iii.      <u>Post-Effective Date Fees and Expenses</u>.  Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action (including, without limitation, the need to file a fee application), order or approval of the Bankruptcy Court.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1    Rejection of Executory Contracts and Unexpired Leases

i.      <u>Leases and Contracts to be Rejected</u>.  On the Confirmation Date, but subject to the occurrence of the Effective Date, pursuant to section 365 of the Bankruptcy Code, all of Debtor's executory contracts and unexpired leases shall be deemed rejected except those that: (i) are the subject of motions to assume or reject pending on the Confirmation Date; (ii) were assumed or rejected before the Confirmation Date; (iii) are listed on Schedule 6.2 annexed hereto; or (iv) are agreements, obligations, security interests, or similar undertakings that Debtor lists as a Secured Claim of Debtor, but the Bankruptcy Court later determine are subject to assumption or rejection; <u>provided</u>, <u>however</u>, that Debtor shall not be required to assume or reject any executory contract or unexpired lease with any party that is a debtor under the Bankruptcy Code or similar insolvency proceeding unless and until such contact or lease has been assumed by such other party.

10965766.3

ii.    Effect of Post-Confirmation Rejection.    The entry by the Bankruptcy Court after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

iii.    Deadline to File Rejection Damage Claims.  Each Person who is a party to a contract or lease rejected under the plan must file with the Bankruptcy Court and serve on Debtor's attorneys not later than thirty (30) days after the Confirmation Date, a proof of Claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.

## 6.2    Assumption of Executory Contracts and Unexpired Leases

i.    Leases and Contracts to be Assumed. As of the Confirmation Date, but subject to the occurrence of the Effective Date, Debtor shall be deemed to have assumed pursuant to section 365 of the Bankruptcy Code, all executory contracts and unexpired leases listed on Schedule 6.2 hereto based on the cure amounts listed in such Schedule. The listing of a contract or lease on any schedule to the Plan will not constitute an admission by Debtor that such contract or lease is an executory contract or unexpired lease or that Debtor has any liability thereunder.

ii.    Deadline to Object to Cure Amounts.  If prior to the Confirmation Date or such other date as the Bankruptcy Court may fix, a party to an executory contract or unexpired lease listed on Schedule 6.2 fails to file with the Bankruptcy Court and serve upon the attorneys for Debtor an objection to the applicable cure amount listed on Schedule 6.2, then such party shall be forever barred from asserting any additional or other amounts against Debtor respecting such cure amount.

iii.    Method of Cure.  At the election of Reorganized Debtor, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash within thirty (30) Days after the Effective Date or such longer period ordered by the Bankruptcy Court; or (b) on such other terms and conditions as may be agreed to by the parties to such executory contract or unexpired lease.  If a dispute occurs regarding: (x) the cure amount; (y) the ability of the applicable Debtor to provide adequate assurance of future performance under the contract or lease to be assumed; or (z) any other matter pertaining to the assumption, then the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of an Final Order resolving the dispute and approving the assumption.  Notwithstanding any provision of an executory contract or unexpired lease to the contrary, assumption of any such contract or lease shall not require: (1) the delivery, reaffirmation, or assumption of any new or existing guaranty of a Debtor's obligations under such contract or lease; or (ii) the resolution of Claim whose treatment is provided for in this Plan. Notwithstanding anything herein to the contrary, Debtor shall retain its right to reject any executory contract or unexpired lease that is subject to a dispute concerning the cure of any defaults until 30 days after such dispute is resolved by a Final Order.

10965766.3

### 6.3    Insurance Policies

Notwithstanding anything herein to the contrary, as of the Effective Date, Debtor shall assume (and assign to Reorganized Debtor if necessary to continue the Insurance Policies in full force) each of the Insurance Policies appearing on the Assumed Executory Contract and Unexpired Lease List pursuant to section 365 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of Debtor's foregoing assumption of each such insurance policy.

## ARTICLE VII.
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 7.1    Discharge

i.    Scope. Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge, effective as of the Effective Date, of all debts of, Claims against, liens on, and Interests in Debtor, its assets or properties, which debts, Claims, liens and Interests arose at any time before the entry of the Confirmation Order. The discharge of Debtor shall be effective as to each Claim, regardless of whether a proof of claim therefore was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept the Plan. On the Effective Date, as to every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting against Debtor, or against Debtor's assets or properties, any other or further Claim or Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

ii.    Injunction. In accordance with section 524 of the Bankruptcy Code, the discharge provided by this section and section 1141 of the Bankruptcy Code, *inter alia*, acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims and Interests discharged hereby.

iii.    Release of Liens; Cancellation and Surrender of Instruments, Securities and Other Documentation.

a)    *Turnover of Property*. Unless a particular Claim is reinstated, Debtor may require that a Holder shall, on or immediately before the Effective Date: (1) turn over and release to Debtor any and all property of Debtor that secures or purportedly secured such Claim; and (2) execute such documents and instruments as Debtor or Reorganized Debtor requires to evidence such claimant's release of such property.

b)    *Release of Liens, etc*. On the Effective Date, except for liens expressly provided to be retained pursuant to the Plan or Exit Facility Documents, all mortgages, deeds of trust, liens or other security interests against the property of any Debtor will be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trusts, liens or other security interests, including any rights to any collateral thereunder, will revert to Reorganized Debtor. Unless expressly provided for herein, each holder of any Allowed Claim shall surrender to Reorganized Debtor any note, instrument, or certified security evidencing such Claim. No Distribution hereunder shall be made to or on behalf of any holder of

a Claim unless and until such holder executes and delivers to Debtor or Reorganized Debtor such release of liens or other timers described above, or demonstrates non-availability of such items to the satisfaction of Reorganized Debtor, including requiring such holder to post a lost instrument or other indemnity bond.  Reorganized Debtor reasonably may require the Holder of any such Claim to hold Reorganized Debtor harmless up to the amount of any Distribution made in respect of such unavailable note, instrument, document, certificate, agreement, certified security or other item evidence such Claim.  Any such holder that fails to execute and deliver such release of liens or other items described above or satisfactorily explain their non-availability to Reorganized Debtor within 180 days of the Effective Date shall be deemed to have no further Claim against Debtor, Reorganized Debtor, or their property in respect of such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property; provided that any such Holder of a Disputed Claim shall not be required to execute and deliver such release of liens until the time such Claim is Allowed or Disallowed.  To the extent any holder of a Claim fails to release the relevant liens as required above, Reorganized Debtor may act as attorney-in-fact, on behalf of the holders of such liens, to provide any releases as may be required in connection with the Plan.

iv.    Satisfaction of Claims and Interests in Debtor.  The treatment to be provided for respective Allowed Claims or Interests in Debtor pursuant to this Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

### 7.2    **Revesting and Vesting**.

Except as otherwise provided in this Plan, on the Effective Date, all Property comprising the estates of Debtor shall vest in Reorganized Debtor, free and clear of all claims, liens, charges, encumbrances and interests of creditors (except to the extent that such claims, liens, charges, encumbrances and/or interests have been reinstated, or as otherwise expressly provided for herein).

### 7.3    **Survival of Certain Indemnification Obligations**

Except as otherwise specifically provided in this Plan, the obligations of the Debtor to indemnify individuals who serve or since the Petition Date served as their respective directors, officers, agents, employees, representatives, and others, including (without limitation) professional persons retained by Debtor, pursuant to Debtor's certificates of incorporation, by-laws, applicable statutes and pre-confirmation agreements in respect of all present and future actions, suits and proceedings against any of such officers, directors, agents, employees, representatives, and others, including (without limitation) professional persons retained by Debtor (in their capacities as such), based upon any act or omission related to service with, for, or on behalf of Debtor before or after the Petition Date as such obligations were in effect at the time of any such act or omission, shall not be discharged or impaired by confirmation or consummation of this Plan but shall survive unaffected by the reorganization contemplated by this Plan and shall be performed and honored by Debtor or Reorganized Debtor regardless of such confirmation, consummation, and reorganization; provided, however, that indemnification obligations based on any act or omission that occurred prior to the Petition Date shall be discharged by consummation of this Plan, but such discharge shall not affect the right of any indemnified Person to: (a) recover under available director and officer insurance coverage (but,

26

for the avoidance of doubt, any claim of such Person to which an insurer may be subrogated is not exempt from discharge); and (b) to use such indemnification obligation as a defense or offset against any claim asserted against such indemnified Person.

### 7.4    Limitation of Liability

NEITHER DEBTOR, REORGANIZED DEBTOR, PRESENT AND FORMER OFFICERS AND DIRECTORS OF DEBTOR, EMPLOYEES, AGENTS, REPRESENTATIVES, ATTORNEYS, ADVISORS, FINANCIAL ADVISORS, ACCOUNTANTS AND INVESTMENT BANKERS (IN EACH INSTANCE ACTING IN SUCH CAPACITY), SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON FOR ANY ACTION TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO THE FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, CONFIRMATION, OR CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, ANY CONTRACT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACTION TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE PLAN OR THE CHAPTER 11 CASE, AND ALL CLAIMS BASED UPON OR ARISING OUT OF SUCH ACTIONS OR OMISSIONS SHALL BE FOREVER WAIVED AND RELEASED; *PROVIDED*, *HOWEVER*, THAT THIS SECTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY: (a) THAT OTHERWISE WOULD RESULT FROM ANY ACTION OR OMISSION TO THE EXTENT THAT SUCH ACTION OR OMISSION IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT; and (b) TO THE EXTENT OF ANY RECOVERIES FOR A PREPETITION CLAIM AGAINST A RELEASED PARTY THAT MAY BE OBTAINED AGAINST A THIRD-PARTY INSURER (BUT, FOR THE AVOIDANCE OF DOUBT, ANY CLAIM TO WHICH AN INSURER MAY BE SUBROGATED SHALL REMAIN SUBJECT TO THIS RELEASE).

### 7.5    Release and Waiver of Claims

i.    Releases of Holders of Claims or Interests.  The following releases and waiver shall be valid, binding, and enforceable and shall supplement any benefits from sections 524 and 1141 of the Bankruptcy Code to Debtor or Reorganized Debtor and to other parties involved in the Chapter 11 Case:

AS OF THE CONFIRMATION DATE, BUT SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, NONE OF DEBTOR, REORGANIZED DEBTOR AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, THEIR RESPECTIVE PRESENT OR FORMER DIRECTORS, OFFICERS, EMPLOYEES, PREDECESSORS, SUCCESSORS, MEMBERS, AGENTS, REPRESENTATIVES, ATTORNEYS, ADVISORS, FINANCIAL ADVISORS, ACCOUNTANTS, AND INVESTMENT BANKERS, (IN EACH INSTANCE ACTING IN SUCH CAPACITY) (COLLECTIVELY THE "RELEASED PERSONS") AND ANY PERSON CLAIMED TO BE LIABLE DERIVATIVELY THROUGH ANY RELEASED PERSON, SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON FOR ANY CLAIM, OBLIGATION, RIGHT, CAUSE OF ACTION OR LIABILITY (INCLUDING, BUT NOT LIMITED TO,

**ANY CLAIMS ARISING OUT OF ANY ALLEGED FIDUCIARY OR OTHER DUTY AND THE AVOIDANCE OF PREFERENCES OR FRAUDULENT CONVEYANCES OR ANY DERIVATIVE CLAIMS) WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, BASED IN WHOLE OR IN PART, ON ANY ACT OR OMISSION, TRANSACTION OR OCCURRENCE FROM THE BEGINNING OF TIME THROUGH THE EFFECTIVE DATE IN ANY WAY RELATING TO DEBTOR, THE CHAPTER 11 CASE, OR THE PLAN; AND ALL CLAIMS BASED UPON OR ARISING OUT OF SUCH ACTIONS OR OMISSIONS SHALL BE FOREVER WAIVED AND RELEASED (OTHER THAN THE RIGHT TO ENFORCE DEBTOR'S OR REORGANIZED DEBTOR'S OBLIGATIONS UNDER THE PLAN, AND THE CONTRACTS, INSTRUMENTS, NOTES, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED UNDER ANY SUCH PLAN); *provided, however*, THAT NO RELEASE PROVIDED UNDER THE PLAN SHALL AFFECT THE LIABILITY OF ANY PERSON: (a) THAT OTHERWISE WOULD RESULT FROM ANY ACTION OR OMISSION TO THE EXTENT THAT SUCH ACTION OR OMISSION IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT; and (b) TO THE EXTENT OF ANY RECOVERIES FOR A PREPETITION CLAIM AGAINST A RELEASED PARTY THAT MAY BE OBTAINED AGAINST A THIRD-PARTY INSURER (BUT, FOR THE AVOIDANCE OF DOUBT, ANY CLAIM TO WHICH AN INSURER MAY BE SUBROGATED SHALL REMAIN SUBJECT TO THIS RELEASE); and *provided further, however*, THAT NOTWITHSTANDING THE RELEASES PROVIDED UNDER THE PLAN, ANY CLAIM ASSERTED AGAINST REORGANIZED DEBTOR PURSUANT TO SECTION 7.3 OF THIS PLAN SHALL REMAIN SUBJECT OT ANY RIGHT OF SET-OFF THAT OTHERWISE WOULD BE AVAILABLE TO DEBTOR OR REORGANIZED DEBTOR IN THE ABSENCE OF ANY SUCH RELEASE.**

ii.    <u>Injunction Related to Releases.</u>  As further provided in section 7.1(ii) of the Plan, the Confirmation Order will permanently enjoin the commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.

**7.6    <u>Retention and Enforcement of Claims</u>**

Except as otherwise provided in this Plan, all Causes of Action and Avoidance Actions are preserved and reserved for later adjudication in accordance with this Plan, and therefore no preclusion doctrine, claim preclusion, estoppels (judicial, equitable or otherwise) or laches will apply to those Claims or Causes of Action on or after the Confirmation Date or the Effective Date of this Plan.  The failure to specifically list or otherwise identify an Avoidance Claim or Cause of Action in this Plan or the Disclosure Statement: (i) is not intended to effect, and to the extent permitted by law will not be deemed to effect a release or waiver of such Avoidance Claim or Cause of Action; and (ii) is not intended to impair, and to the extent permitted by law will not impair, Reorganized Debtor's right to pursue such an Avoidance Claim or Cause of Action.

10965766.3

## ARTICLE VIII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 8.1    Modification and Amendments

Except as otherwise specifically provided in the Plan, Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1125 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, Debtor expressly reserves its rights to revoke or withdraw, or, to alter, amend, or modify materially the Plan with respect to Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article VIII.

### 8.2    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolution under Bankruptcy Rule 3019.

### 8.3    Revocation or Withdrawal of the Plan

Debtor reserve the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void in all respects; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims or Interests in any respect: (b) prejudice in any manner the rights of such Debtor or any other Entity in any respect; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity in any respect.

## ARTICLE IX.
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 9.1    Conditions Precedent to Confirmation

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions section 9.3 of Article IX:

1.    The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement with respect to the Plan

as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; *provided*, *however*, that the order approving the Disclosure Statement will be deemed to by a Final Order even if an appeal has been or may be taken, or a petition for certiorari has been or may be filed, and not been resolved so long as the Confirmation Order has not been reserved, stayed, modified or amended.

2.      All provisions, terms and conditions hereof shall have been approved in the Confirmation Order, which shall be reasonably satisfactory in form and substance to Debtor.

**9.2     Conditions Precedent to Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to section 9.3 of Article IX.

1.      The Confirmation Order, which shall include a finding by the Bankruptcy Court that any Plan Securities to be issued on the Effective Date will be authorized and exempt from any taxes pursuant to section 1146(a) of the Bankruptcy Code and otherwise reasonably satisfactory in form and substance to the Debtor, shall be a Final Order; *provided* that the Confirmation Order will be deemed to be a Final Order even if an appeal has been or may be taken, or a petition for certiorari has been or may be filed, and not been resolved so long as the Confirmation Order has not been reserved, stayed, modified or amended.

2.      Any amendments or modifications to the Plan made after the entry of the Confirmation Order shall be reasonably satisfactory in form and substance to the Debtor.

3.      All of the schedules, documents, supplements and exhibits to the Plan, including any Plan Supplement, shall have been filed in form and substance acceptable to the Debtor.

4.      The Debtor shall have executed and delivered appropriate definitive documentation regarding the Exit Facility Documents and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

5.      All material governmental, regulatory and third party licenses, approvals, waivers and/or consents in connection with the terms of this Plan shall have been obtained and shall remain in full force and effect and there shall exist no claim, action, suit, investigation, litigation or proceedings, pending or threatened in any court or before any arbitrator or governmental instrument, which would prohibit the transactions contemplated herein.

**9.3     Waiver of Conditions to Confirmation Date and Effective Date**

The conditions to Confirmation of the Plan and the conditions to the occurrence of the Effective Date set forth in Article IX may, in each case, be waived at may be waived by the Debtor without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  However, the for avoidance of doubt, entry of the Confirmation Order may not be waived.

10965766.3

**9.4**    **Effect of Nonoccurrence of the Conditions to Effective Date**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Entity; or (3) constitute an admission, acknowledgement, offer or understanding by the Debtor, any Holders of Claims or Interests or any other Entity in any respect.

**ARTICLE X.**
**ADMINISTRATIVE PROVISIONS**

**10.1**    **Retention of Jurisdiction**.

Provided that the following neither expands nor reduces the Bankruptcy Court's subject matter jurisdiction or the jurisdiction of any other court or regulatory body beyond that allowed for the Chapter 11 Case by applicable law, notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

i.    Allow, disallow, subordinate, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, of any request for the payment or distribution on account of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code, and of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

ii.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

iii.    Resolve any matters related to: (a) the assumption, assumption and assignment, or rejects of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executor or unexpired;

iv.    Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

v.    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications

31

involving Debtor that may be pending on the Effective Date or may be instituted by the Reorganized Debtor prior to or after the Effective Date;

vi.     Adjudicate, decide, or resolve any and all matters related to Causes of Action;

vii.     Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

viii.     Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or Disclosure Statement;

ix.     Enter and enforce any order for the sale of property pursuant to section 363, 1123, or 1146(a) of the Bankruptcy Code;

x.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

xi.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

xii.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VII hereof an enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

xiii.     Here and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, including any disputed relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

xiv.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for Claims paid by third parties.

xv.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

xvi.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or Disclosure Statement;

xvii.     Enter an order or final decree concluding or closing the Chapter 11 Case;

10965766.3

xviii.    Adjudicate any and all disputes arising from or relating to the distributions under the Plan;

xix.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

xx.    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

xxi.    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

xxii.    Enforce all orders previously entered by the Bankruptcy Court; and

xxiii.    Hear any other matter not inconsistent with the Bankruptcy Code.

## 10.2    <u>Governing Law</u>

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; <u>provided</u>, <u>however</u>, that corporate governance matters relating to Debtor or Reorganized Debtor, as applicable, incorporated in Pennsylvania, shall be governed by the laws of the Commonwealth of Pennsylvania.

## 10.3    <u>Immediate Binding Effect</u>

Subject to Article IX hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and to the extent necessary any Plan Supplement, shall be immediately effective and enforceable and deemed binding upon Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, relates, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

## 10.4    <u>Amendments and Additional Documents</u>.

On or before the Effective Date, Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Debtor or Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents

and take any other actions as may be necessary or appropriate to effectuate the provisions and intent of the Plan.

**10.5   Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**10.6   Service of Documents**

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to Debtor shall be served on:

> Daniel A. DeMarco
> Christopher B. Wick
> HAHN LOESER & PARKS LLP
> 200 Public Square, Suite 2800
> Cleveland, Ohio  44114
> Telephone:   (216) 621-0150
> Facsimile:    (216) 241-2824
> E-mail:        dademarco@hahnlaw.com
>                    cwick@hahnlaw.com

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to Reorganized Debtor shall be served on:

> [To be provided]

After the Effective Date, Debtor has authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**10.7   Severability**

If, prior to the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The

Confirmation Order shall constitute a judicial determination and shall be deemed to provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor's consent; and (3) non-severable and mutually dependent.

### 10.8    Confirmation Order and Plan Control

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between or among Debtor and any third party, this Plan shall control.  To the extent of any inconsistencies between this Plan and the Confirmation Order, the Confirmation Order shall control.

### 10.9    Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court, shall be paid for each quarter (including any fraction thereof) until the first to occur of the Chapter 11 Case being converted, dismissed, or closed.

### 10.10    Time

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the Day of the act or event from which the designated period begins to run shall not be included.  The last Day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding Day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

### 10.11    Continuation of Injunctions and Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan and Confirmation Order shall remain in full force and effect in accordance with their terms.

### 10.12    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, no issuance, transfer or exchange of any security, transfer of any property, or making, delivery, filing or recording of any instrument of transfer, in each case in contemplation of, in connection with or pursuant to the Plan (including, for this purpose, in connection with the Exit Facility Agreement and other documents related to the transactions described in Article V) shall be subject to any recording tax, stamp tax, transfer tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfer of property without the payment of any such tax or governmental assessments.

Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, Lien or other security interest, (2) the making or assignment of any lease or sublease, (3) and the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including but not limited to: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

### 10.13    Entire Agreement

Except as otherwise indicated, the Plan and to the extent necessary any Plan Supplement, supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 10.14    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall have entered the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement, shall be or shall be deemed to be an admission or wavier of any rights of any Debtor with respect to the Holders of Claims and Interests prior to the Effective Date.

### 10.15    Rules of Construction

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan, any Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-documents portion of the Plan shall govern and control.  Any terms used herein that is not defined herein shall have the meanings ascribed to any such term used in the Bankruptcy Code and or the Bankruptcy Code, if used therein.

*[Signature page follows]*

Dated:    June 14, 2019                    Respectfully submitted,


                                          */s/ Daniel A. DeMarco*
                                          Daniel A. DeMarco (OH Bar No. 0038920)
                                          Christopher B. Wick (OH Bar No. 0073126)
                                          HAHN LOESER & PARKS LLP
                                          200 Public Square, Suite 2800
                                          Cleveland, Ohio  44114
                                          Telephone:    (216) 621-0150
                                          Facsimile:    (216) 241-2824
                                          E-mail:    dademarco@hahnlaw.com
                                                     cwick@hahnlaw.com
                                          and

                                          Kirk B. Burkley (PA ID No. 89511)
                                          BERNSTEIN BURKLEY, P.C.
                                          707 Grant Street, Suite 2200 Gulf Tower
                                          Pittsburgh, PA 15219-1900
                                          Telephone: (412) 456-8108
                                          Facsimile: (412) 456-8135
                                          Email: kburkley@bernsteinlaw.com

                                          *Co-counsel for Debtor*

10965766.3

# EXHIBIT 4.1

### Non-Binding Term Sheet
### June 13, 2019

<u>General Terms and Conditions</u>

| | |
|---|---|
| Borrower: | Appalachian Lighting Systems, Inc ("Reorganized Debtor" or "Borrower") |
| Lender: | JP Lender, LLC |
| Security: | All assets of Reorganized Debtor |
| Use of Proceeds: | Working capital and funding to exit chapter 11 case |
| Loan Amount: | $250,000.00 |
| Interest Rate | 4% |
| Term: | 60 months |
| Payment Frequency: | Monthly (60 total payments) |
| Amortization: | (i) on the first day of the month, beginning in the month following the month following the chapter 11 Plan Effective Date, interest only for twenty-four months; <br><br> (ii) thereafter, on the first day of the month, principal and interest (on a twenty-year amortization), for thirty-six months, and <br><br> (iii) thereafter, on the first day of the month, the balance due. |
| Collateral: | Blanket lien on all assets of Reorganized Debtor, subject to pre-existing liens not satisfied or modified under the chapter 11 Plan |
| Conditions to Close: | • Confirmation of chapter11 Plan <br> • Equity contribution has been made as required under the chapter 11 Plan <br> • Execution of definitive documentation |
| Governing Law: | Pennsylvania |
| Closing Date: | On or before August 31, 2019 |